UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

LAWRENCE LOMBARDI,                    :
                                      :
            Plaintiff                 :
                                      :
      v.                              :    CIVIL NO. 4:CV-05-300
                                      :
MICHAEL PUGH, ET AL.,                 :
                                      :    (Judge McClure)
            Defendant                 :

## MEMORANDUM AND ORDER

March 8, 2006

## Background

Lawrence Lombardi ("Plaintiff"), an inmate presently confined at the

United States Penitentiary, Lewisburg, Pennsylvania ("USP-Lewisburg"), initiated

this *pro se* civil rights action.  By Memorandum and Order dated January 17,

2006, Defendant Lawrence Schiffman, D.O.'s motion to dismiss was granted.

The remaining Defendants are the following officials at the Allenwood

United States Penitentiary, White Deer, Pennsylvania ("USP-Allenwood"): ex-

Warden Michael Pugh, Health Services Administrator Ron Laino, Unit Manager

1

Angel Levi, and Warden Troy Williamson.   According to the complaint, the

Plaintiff met with Health Services Administrator Laino in March, 2003 regarding

a rash that had appeared on his body.   The following month, Doctor Schiffman, a

dermatologist, diagnosed Plaintiff as suffering from hives and prescribed

treatment with Prednisone, an oral steroid.  See  Record document no. 1, ¶ 12.

When Lombardi's condition did not improve, Defendant Laino prescribed an

additional course of Prednisone on May 27, 2003.

    After telling an unidentified member of the USP-Allenwood Health

Services Department that his condition was no better, Plaintiff was seen by Doctor

Schiffman via "Tele-Med" on June 27, 2003.  Id. at ¶ 15.   Doctor Schiffman

directed that a skin biopsy be taken.  On July 9, 2003, the Plaintiff was placed on

anti-depressant medication by a member of the prison's Psychology Services

Department due to his inability to sleep.

    As a result of the biopsy, Lombardi was diagnosed on August 11, 2003 as

suffering from Folliculitis, an inflammation of the hair follicles.  Doctor

Schiffman ordered an additional round of Prednisone.  Three days later, the

Prednisone was discontinued by Schiffman and Plaintiff was given a seven (7) day

prescription of Keflex, an antibiotic.

On August 23, 2003, Lombardi was prescribed a different antibiotic, Doxycycline.  Plaintiff began experiencing "a very painful burning sensation" throughout his body on September 4, 2003.  Id. at ¶ 20.  His skin was allegedly bright red.  After complaining about his inability to sleep, Plaintiff was placed on anti-psychotic medication by an unidentified member of the Psychology Services Department on September 10, 2003.  By the morning of September 13, 2003, Lombardi's rash had intensified and his breathing was labored, and he was seen by A. Duttry, a prison paramedic.

Two days later, Plaintiff asked Unit Manager Woolever to speak  to Defendant Laino about the possibility of the prisoner's being taken to an outside hospital for treatment.  A short while later, Woolever informed the Plaintiff that he would not be taken for outside treatment.  On September 17, 2003, Laino allegedly told Lombardi that there was no cure for his condition.  After suffering an intense burning sensation on September 29, 2003, Lombardi was taken to the prison's Health Services Department as a "medical emergency."  Id. at ¶ 27.

Plaintiff next alleges that beginning in August, 2003, other USP-Allenwood prisoners reported having the same type of rash.   In response, ex-Warden Pugh issued a memorandum regarding the outbreak of rashes on December 12, 2003.

3

Thereafter, Lombardi states that he filed numerous complaints with various federal officials regarding his request for outside treatment.  On February 4, 2004, Plaintiff informed Laino that a terminally ill inmate had been assigned as his cell mate.  The Defendant  purportedly responded that the cell mate assignment was Plaintiff's punishment for making so many medical complaints.

The complaint next asserts that in July, 2004, Doctor Schiffman issued Plaintiff a prescription for Acticin, an anti-parasitic cream.  However, Lombardi alleges that he suffered an adverse reaction after using the cream.  On October 6, 2004, Doctor Schiffman examined several inmates, including Lombardi.  The next day  Defendant Laino announced at a meeting that a prisoner in Plaintiff's housing unit had been diagnosed with "scabies."  Id. at ¶ 38.  As part of a unit wide response to the problem, Lombardi's housing unit was locked down on October 12, 2004 and he agreed to be taken to the prison infirmary for the purpose of receiving an application of Acticin.  After spending the night in the infirmary, Lombardi was returned to his housing unit the next day.  However, due to a shortage of beds, he was placed in the prison's Special Housing Unit ("SHU") by Unit Manager Levi.  One day later, Defendant Levi informed Plaintiff that the other prisoners in his cell unit felt that he was the origin of the scabies outbreak.

Paramedic Duttry went to Plaintiff's SHU cell on October 28, 2004 and gave him a prescription for Ivermectin, and told the prisoner that this medicine was used by veterinarians to treat horses infected with worms.  On November 4, 2004, Doctor Schiffman allegedly informed the Plaintiff that he was not the origin of the scabies outbreak.   Lombardi concludes that he was improperly kept in the SHU until his November 17, 2004 transfer to USP-Lewisburg.

Plaintiff adds that despite various complaints and grievances, the remaining Defendants were deliberately indifferent to his medical needs.  Lombardi adds that rather than granting his request for outside treatment, Defendants Pugh and  Laino chose a less expensive course of treatment, failed to protect his safety by giving other inmates the impression that Lombardi was responsible for the scabies outbreak,  and retaliated against him for his initiation of complaints and grievances.  Lombardi additionally maintains that despite having knowledge that Plaintiff had a serious health problem, ex-Warden Pugh failed to order an internal investigation.  His final contention is that Warden Williamson approved Defendant Levi's request to have him transferred without any regard for the treatment of Plaintiff's medical needs.

In conclusion, Lombardi claims that the remaining Defendants were deliberately indifferent to his medical needs by not providing him with outside treatment; failed to protect his safety by causing Lombardi to be labeled as a

disease carrier during the scabies outbreak; improperly confined him in the SHU;

and arranged for his retaliatory, subsequent transfer.  His complaint seeks

compensatory and punitive damages.

Defendants Pugh, Levi, Laino, and Williamson (hereinafter the "Federal

Defendants") responded to the complaint by filing a motion to dismiss or in the

alternative for summary judgment.  See Record document no. 17.  The  motion has

been briefed and is ripe for disposition.

**Discussion**

**Standard of Review**

As noted above, the Federal Defendants have filed a motion seeking

dismissal or in the alternative entry of summary judgment.  The motion raises the

following arguments: (1) Lombardi failed to exhaust his administrative remedies

with respect to his deliberate indifference to safety and transfer to USP-Allenwood

claims; (2) the claims against Warden Pugh are premised on a theory of

*respondeat superior*; and (3) the Federal Defendants are entitled to qualified

immunity because a viable constitutional claim of deliberate indifference to his

medical needs has not been asserted.  See  Record document no. 20, ¶ III.

The motion is accompanied by evidentiary materials [documents] outside

the pleadings which are relevant for purposes of both determining the issue of

administrative exhaustion as well as their alternative arguments.  Rule 12(b)

provides in part as follows:

> If, on a motion asserting the defense numbered (6) to
> dismiss for failure of the pleading to state a claim upon
> which relief can be granted, matters outside the pleading
> are presented to and not excluded by the court, the
> motion shall be treated as one for summary judgment
> and disposed of as provided in Rule 56, and all parties
> shall be given reasonable opportunity to present all
> material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).  The Court will not exclude the evidentiary materials

[documents] accompanying the Federal Defendants' motion.  Thus, their motion

will be treated as solely seeking summary judgment.

Plaintiff opposes the motion in part on the grounds that it is prematurely

filed because "discovery has not yet been initiated or scheduled in this case."

Record document no. 28, p. 4.  It is initially noted that the Federal Defendants'

pending motion was submitted approximately four (4) months after the initiation

of this action.  Thus, Lombardi was afforded an opportunity to initiate discovery.

Second, Plaintiff has submitted forty-seven (47) pages of documentary evidence in

opposition to the dispositive motion.  <u>See</u>  Record document no. 28.

The Plaintiff's argument is the functional equivalent of a request for

continuance under Federal Rule of Civil Procedure 56(f).  <u>See</u> <u>St. Surin v. Virgin

Island Daily News,</u> 21 F.3d 1309 (3d Cir.  1994).   However, Lombardi's

opposing brief does not identify any discovery that he wishes to undertake, state

how if uncovered, the discovery material would preclude the instant request for

summary judgment, and explain why the discovery material was not previously obtained.  See  Dowling v. City of Philadelphia, 855 F.2d 136, 140 (3d Cir. 1988).[1]

In accordance with the Third Circuit Court of Appeals' holding in  Pastore v. Bell Tel. Co. of Pennsylvania, 24 F.3d 508, 511 (3d Cir. 1994), this Court will not delay consideration of the summary judgment motion based on the Plaintiff's conclusory contention that he needs more time for discovery.  See  Stanton v. Rich, Baker, Berman, & Co., 876 F.Supp. 1373, 1391 (D. N.J.  1995).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law"

---

[1]    The only specific mention of discovery by Plaintiff was set forth in his previously submitted motion for appointment of counsel.  Therein, Lombardi stated that he required counsel in order to obtain a medical expert witness.  See Record document no. 15, ¶ 5.  However, as demonstrated by the Court's decision herein, Plaintiff's failure to submit an opposing affidavit by a medical expert had no effect on the disposition of the pending summary judgment motion.

because the nonmoving party has failed to make a sufficient showing
on an essential element of her case with respect to which she has the
burden of proof.  "[T]he standard [for granting summary judgment]
mirrors the standard for a directed verdict under Federal Rule of Civil
Procedure 50(a)...."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, supra, 106 S.Ct. at 2553 and 2554.  Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence" to defeat the motion, consisting of verified or documented materials.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  Issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment.  Id.  In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

***Respondeat Superior***

The Federal Defendants argue that Warden Pugh is entitled to summary judgment because Lombardi has not alleged any direct involvement by Pugh in the alleged constitutional violations.  Consequently, they maintain that the Plaintiff is attempting to establish liability against Pugh solely on a theory of *respondeat superior*.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

A review of the complaint establishes that the Plaintiff acknowledges that he was under the care of Doctor Schiffman, as well as members of the prison's Health Services and Psychology Departments.  Lombardi alleges that "as Warden Pugh had the authority to order immediate action."  Record document no. 1, ¶ 52. He also contends that Pugh's failure to insist that he be provided with outside medical treatment led to the Plaintiff's being labeled as a disease carrier.  The only other mention of the ex-Warden is Lombardi's notation that Pugh denied his administrative grievance in September, 2003.

An affidavit submitted by Lombardi in opposition to the summary judgment motion avers that the prisoner showed the ex-Warden his skin condition during August, 2003 and that Pugh advised him that if a grievance was filed, he would take care of it personally.  See Record document 29, ¶ 10.  Finally, Lombardi's opposing brief argues that Pugh's denial of his administrative grievance satisfies the personal involvement requirement.

Based on the nature of Plaintiff's allegations regarding ex-Warden Pugh, it is apparent that his only viable claims are attempting to establish liability against Pugh solely on the basis of his supervisory capacity.  The complaint contains no allegations that Pugh was involved in any decision made with respect to Lombardi's medical treatment.  Furthermore, the Court of Appeals for the Third

Circuit in <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993) recognized that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff.  Only where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, is a constitutional claim presented.

Furthermore, prison inmates do not have a constitutionally protected right to a grievance procedure.  <u>See</u> <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 137-38 (1977).  Accordingly, Lombardi cannot establish liability against Pugh based on the latter's failure to grant relief or take corrective action based on allegations raised by the inmate via the administrative remedy procedure.

Under the standards developed in <u>Durmer</u>, <u>Jones,</u> and <u>Capone</u>, Plaintiff's assertions regarding ex-Warden Pugh are insufficient for establishing civil rights liability.   Since there are no allegations that Pugh  had direct involvement or acquiescence in any constitutional misconduct, he is entitled to an entry of summary judgment.


**<u>Administrative Exhaustion</u>**

The Federal Defendants concede that Lombardi exhausted his administrative remedies with respect to the claims regarding the purported

deliberate indifference to his medical needs.  However, they argue that Plaintiff's allegations that the Federal Defendants failed to protect his safety and improperly transferred him to USP-Allenwood are unexhausted, and thus, should not be entertained by this Court.

In his opposing affidavit, Lombardi asserts that he filed two grievances seeking his release from the SHU and attempted to assert his failure to protect and retaliatory transfer claims in a grievance following his arrival at USP-Lewisburg but was told by unidentified prison officials that said allegations could not be grieved because those issues were moot.

42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001).  Claims for monetary relief are not excused from the exhaustion requirement.  Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000).  Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action.  Ahmed v. Sromovski, 103 F. Supp.

13

2d 838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur prior to filing suit, not while the suit is pending."  Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)).

An inmate's failure to comply with the administrative exhaustion requirement constitutes an affirmative defense.  See e.g., Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 2000), cert. denied, 532 U.S. 1065 (2001); Jenkins v. Haubert, 179 F.3d 19, 29 (2d Cir. 1999); Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997)(holding, in the context of a Title VII case, that failure to exhaust administrative remedies is an affirmative defense).  Consequently, a prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002).  Rather, it is the burden of a defendant asserting the defense to plead and prove it.  Id.;  Williams v. Runyon,130 F.3d 568, 573 (3d Cir. 1997); Charpentier v. Godsil, 937 F.2d 859 (3d Cir. 1991); Fed. R. Civ. P. 8(c).

The BOP has established a multi-tier Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment.[2]  See 28 C.F.R.

---

2.  Matters excluded from this program are set forth at 28 C.F.R. § 542.12, which states as follows:

> (a) An inmate may not use this Program to submit a Request or Appeal on behalf of another inmate.  This program is intended to address concerns that are personal to the inmate making the Request or Appeal, but shall not prevent an

(continued...)

§§ 542.10-542.19 (1998).  "This program applies to all inmates confined in institutions operated by the Bureau of Prisons, to inmates designated to Community Corrections Centers (CCCs) under Bureau of Prisons' responsibility, and to former inmates for issues that arose during their confinement but does not apply to inmates confined in other non-federal facilities."  <u>Id</u>. at § 542.10.

The program provides that, with certain exceptions,  "... an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request For Administrative Remedy."[3] <u>Id</u>. at § 542.13(a).  Next, if informal resolution fails, the inmate must submit "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within 20

---

(...continued)
        inmate from obtaining assistance in preparing a Request or
        Appeal, as provided in § 542.16 of this part.
                (b) Requests or Appeals will not be accepted under the
        Administrative Remedy Program for claims for which other
        administrative procedures have been established, including
        tort claims, Inmate Accident Compensation claims, and
        Freedom of Information or Privacy Act requests.  Staff shall
        inform the inmate in writing of the appropriate procedure if
        the Request or Appeal is not acceptable under the
        Administrative Remedy Program.

    3. CCC inmates are not required to seek informal resolution.  <u>Id</u>. at §
542.13(b).  Informal resolution is not required for those matters identified in §
542.14(d), which include sensitive issues and DHO, Control Unit, and Controlled
housing status appeals.  <u>Id</u>.  Additionally, informal resolution may be waived in
individual cases at the discretion of either the Warden or the institution Administrative
Remedy Coordinator "when the inmate demonstrates an acceptable reason for
bypassing informal resolution."  <u>Id</u>.

"calendar days following the date on which the basis for the Request occurred." Id. at § 542.14(a).  If a valid reason for delay is given, an extension of the filing time may be granted.  Id. at 542.14(b).  The Warden has 20 calendar days from the date the Request or Appeal is filed in which to respond.  Id. at § 542.18.

If not satisfied with the Warden's response, an inmate may appeal on the appropriate form (BP-10) to the Regional Director within 20 calendar days of the date the Warden signed the response.  Id. at § 542.15.  Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed on the appropriate form (BP-11) to the General Counsel within 30 calendar days from the date the Regional Director signed the response.  Id.  "When the inmate demonstrates a valid reason for delay, these time limits may be extended."  Id.  The Regional Director has 30 calendar days to respond and the General Counsel has 40 calendar days in which to respond.  Id. at § 542.18.

The response time provided for at each level may be extended in writing "once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level."  Id.  Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  Id.

Once the moving party has satisfied its burden of identifying evidence which demonstrates an absence of a genuine issue of material fact, see Childers, 842 F.2d at

694, the nonmoving party is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex, 477 U.S. at 324.

A review of the record, particularly the affidavit and exhibits[4] submitted by Lombardi, shows that there are issues of material fact in dispute as to whether the Plaintiff's claims relating to his transfer, SHU placement, and failure to protect should be dismissed for non-exhaustion.  Lombardi has also set forth facts which could provide a proper basis as to why he should be excused from the exhaustion requirement.   Accordingly, the Federal Defendants' request for summary judgment on the basis of non-exhaustion with respect to said claims will be denied.

**Qualified Immunity**

The Federal Defendants' final summary judgment argument maintains that they are entitled to qualified immunity since a viable claim of deliberate indifference to Lombardi's medical needs has not been alleged.

Qualified immunity is an affirmative defense which must be pleaded by the defendant official.  Id.; Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States

---

[4]   Plaintiff has submitted copies of two grievances and responses which were generated by those submissions wherein he sought his release from the SHU.  See Doc. 29, Exhibits 21 & 22.

Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997). It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), established a two part test for analyzing qualified immunity claims. See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136. The second prong requires a determination as to whether the constitutional right at issue was clearly established. If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. A determination that the conduct violated a clearly established constitutional right precludes the

granting of qualified immunity.

With respect to the first prong of <u>Saucier</u>, pursuant to the Supreme Court's decision in <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), an inmate plaintiff must demonstrate that prison officials have breached the standard of medical treatment to which he was entitled.  The government has an "obligation to provide medical care for those whom it is punishing by incarceration."  <u>Id</u>. at 103.

However, a constitutional violation does not arise unless there is "deliberate indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain."  <u>Id</u>. at 104 (citation omitted).  The Court of Appeals for the Third Circuit has held that not every injury or illness enjoys constitutional protection; only serious medical needs are actionable.  <u>Colburn v. Upper Darby Township</u>, 946 F.2d 1017, 1023 (3d Cir. 1991); <u>West v. Keve</u>, 571 F.2d 158, 161 (3d Cir. 1978).  Furthermore, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  <u>Estelle</u>, 429 U.S. at 106.

A later decision by the Supreme Court addressed the issue of what standard should be applied in determining deliberate indifference in Eighth Amendment cases.

The Court established that the proper analysis is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).   As noted earlier, the Court of Appeals for the Third Circuit in Durmer,  added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff.  However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  See id.

Under Farmer, deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety.  Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir.  2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.  In Beers-Capitol it was also recognized that a defendant's knowledge of a risk can be proved indirectly by circumstantial evidence.

The complaint clearly acknowledges that Plaintiff was provided with ongoing treatment by a specialist (dermatologist), Doctor Schiffman.  See Record document no. 1, ¶ 7.  Lombardi also admits that he underwent a skin biopsy and was prescribed various medications for his rash.  The gist of Plaintiff's medical care related claims is

his disagreement with the course of treatment provided, especially that he was

prescribed Acticin, was not provided with outside medical treatment and that Doctor

Schiffman and Health Services Administrator Laino made no effort to determine the

cause of his rash.  See id. at ¶ 55.

Three of the four Federal Defendants, Unit Manager Levi, ex-Warden Pugh and

Warden Williamson are clearly non-medical defendants.  Since there is no indication

that a recommended referral was denied, Plaintiff's general contention that the three

non-medical Federal Defendants should have referred him for outside treatment does

not by itself set forth a viable constitutional claim under Durmer.  Since there are

simply no claims that any prescribed course of treatment was delayed or denied on the

basis of non-medical reasons, a viable claim of medical deliberate indifference has

not been stated against non-medical Defendants Levi, Pugh and Williamson.

Finally, in regards to Health Services Administrator Laino, the gist of

Plaintiff's complaint is that said Defendant was deliberately indifferent by not

ordering Lombardi to be taken for outside medical treatment.  This contention is

contradicted by Plaintiff's admission that his treating dermatologist, Doctor

Schiffman, was not a prison employee and thus, falls within the category of being an

outside medical provider.  Furthermore, there is no indication that any medical

personnel requested or recommended to Defendant Laino that Lombardi required any

additional outside medical treatment.

In conclusion, the undisputed facts establish that Plaintiff was treated by an outside specialist and there was no rejection by Laino of any additionally prescribed outside treatment.  This is simply not a case where needed treatment for a serious medical condition was unnecessarily denied or delayed by Laino.  Accordingly, it is apparent to this Court that Lombardi's complaint at best challenges the quality of the medical care provided, claims which under <u>Estelle</u> are not properly asserted in a civil rights action. Thus, Defendant Laino is also entitled to entry of summary judgment with respect to the claims of deliberate indifference to Lombardi's medical needs.

Pursuant to the above discussion, the first prong of <u>Saucier</u> has not been satisfied with respect to the claims that the Federal Defendants were deliberately indifferent to Lombardi's medical needs.   As a result, they are entitled to qualified immunity with respect to that contention.  Further discussion of the Federal Defendants' qualified immunity argument is not required.  Consequently,

**IT IS HEREBY ORDERED THAT:**

1.   The Federal Defendants' dispositive motion is construed as solely seeking summary judgment.

2.   The Federal Defendants' summary judgment motion (Record document no. 17) is GRANTED IN PART.

3.   Summary judgment is entered in favor of ex-Warden Michael Pugh and with respect to the allegations that remaining Federal

Defendants Laino, Levi, and Williamson were deliberately indifferent to Plaintiff's medical needs.

4.  Summary judgment is DENIED regarding the argument that Plaintiff's surviving claims of failure to protect by creating the impression that Lombardi was the cause of the scabies outbreak, improper placement in the SHU, and retaliatory transfer were unexhausted.

5.  Within twenty (20) days of the date of this Order the three (3) remaining Federal Defendants shall submit a response to the surviving claims.

<u>s/James F. McClure, Jr.</u>
JAMES F. McCLURE, JR.
United States District Judge