IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAWRENCE LOMBARDI,                    :
                                       :
            Plaintiff,                 :        CIVIL NO. 4:CV-05-0300
                                       :
    v.                                 :        (Judge McClure)
                                       :
MICHAEL PUGH, *et al.*,                :
                                       :
            Defendants.                :

**<u>MEMORANDUM</u>**

June 9, 2009

Presently before the Court is a motion for summary judgment pursuant to Fed.

R. Civ. P. 56 filed on behalf of Remaining Defendants Ron Laino and Angel Levi

("Defendants"). (Rec. Doc. No. 119.) For the reasons set forth below, the motion will

be granted.

**BACKGROUND**

This *pro se* civil rights action was filed on February 10, 2005 by Plaintiff

Lawrence Lombardi ("Plaintiff" or "Lombardi"), an inmate presently confined at the

United States Penitentiary at Tuscon ("USP Tuscon") in Tuscon, Arizona. His

original Complaint raised *Bivens*[1] claims against four (4) Bureau of Prisons ("BOP")

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403
(continued...)

employees employed at the Allenwood United States Penitentiary ("USP Allenwood") in White Deer, Pennsylvania, where Lombardi previously was incarcerated. By Order dated December 11, 2006, Plaintiff's motion for leave to file an amended complaint was granted, and Lombardi's proposed Amended Complaint (Rec. Doc. No. 53) was accepted.

The sole remaining claim of Lombardi's Second Amended Complaint is that Defendants Laino, Health Services Administrator, and Levi, Unit Manager, engaged in retaliatory misconduct which resulted in Lombardi becoming a target of abuse from fellow inmates and ultimately led to his SHU placement and transfer to another institution. (*See* Rec. Doc. No. 88 at 31-32.)

On April 11, 2008, the instant motion for summary judgment was filed on behalf of Defendants. (Rec. Doc. No. 119.) On April 25, 2008, Defendants filed a supporting brief (Rec. Doc. No. 121), supporting exhibits (Rec. Doc. 121-3), and a statement of material facts (Rec. Doc. No. 122). Following a request for an extension

---

[1](...continued)
U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

of time, which was granted, on July 1, 2008, Plaintiff filed an opposition brief (Rec. Doc. 127), supporting exhibits (Rec. Doc. No. 129), and a statement of material facts (Rec. Doc. No. 128) responding to Defendants' statement. On July 17, 2008, Defendants filed a reply brief.[2] (Rec. Doc. No. 130.) Accordingly, the motion for summary judgment is ripe for consideration.

## STANDARD OF REVIEW

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. *Id.*; *Justofin v. Metropolitan Life Ins. Co.,* 372 F.3d 517, 521 (3d Cir. 2004).

---

[2] Plaintiff filed a document entitled "Cross-Brief in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgement" on July 28, 2008 (Rec. Doc. No. 131). This document has not been reviewed by the Court in disposing of the instant motion because Plaintiff did not request leave to file an additional brief. *See* M.D. Pa. LR 7.7 ("A brief in reply to matters argued in respondent's brief may be filed by the moving party within ten (10) days after service of the respondent's brief. No further briefs may be filed without leave of court.")

A party seeking the entry of summary judgment bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). However, the nonmoving party cannot do so merely by offering general denials, vague allegations, or conclusory statements; rather, the party must point to specific evidence in the record that creates a genuine issue as to a material fact. *Celotex*, 477 U.S. at 324; *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). In evaluating a motion for summary judgment, the court will draw all reasonable inferences from the evidence in the record in favor of the nonmoving party. *Am. Flint Glass Workers Union v. Beaumont Glass Co.*, 62 F.3d 574, 578 (3d Cir. 1995).

**DISCUSSION**

## I.   Statement of Facts

### A.   Facts Relating to Sole Remaining Claim of Retaliation

Lombardi initially arrived at USP Allenwood on October 25, 2000.  (Rec. Doc. No. 122, Defendants' statement of material facts, ¶ 2.)  He was transferred to the United States Penitentiary at Lewisburg ("USP Lewisburg") in Lewisburg, Pennsylvania, on November 17, 2004.  (*Id.* ¶ 3.)  Lombardi's allegations in his Amended Complaint (Rec. Doc. No. 53), as set forth in Defendants' statement of material facts, are as follows:

From August 2003 through October 2004, while he was an inmate at USP Allenwood, Lombardi suffered from and was treated for a rash on his body.  (*Id.* ¶ 4.)  Beginning in August 2003, a large number of inmates at USP Allenwood began to experience a similar type of body rash.  (*Id.* ¶ 5.)  On October 12, 2004, Unit 1B, the housing unit to which Lombardi was assigned, was "locked down" from the rest of the general population so that inmates in that unit could be treated for what was suspected to be an outbreak of scabies.  (*Id.* ¶ 6.)  On the same day, Lombardi was removed from Unit 1B and escorted to the prison hospital, where he received treatment for scabies.  (*Id.* ¶ 7.)

On October 13, 2004, Lombardi was returned to Unit B1; however, he was then

placed in the SHU by Defendant Levi. (*Id.* ¶ 8.) Initially, Levi told him that he was not coming back into her unit because she had enough problems right now, but later she told him that he was placed in the SHU because of a lack of bed space. (*Id.* ¶¶ 9, 10.) Two days later, Levi told Lombardi that "although an inmate who had been transferred back in July had scabies the unit's perception is different." (*Id.* ¶ 11.) In response to a request to staff, he was told that "staff received information in reference to your safety." (*Id.* ¶ 12.)

On November 12, 2004, Levi told Lombardi that the warden was "shipping his ass out," and stated that Lombardi "was a pain in the ass." (*Id.* ¶ 13.) Lombardi remained in the SHU until he was transferred to USP Lewisburg on November 17, 2004. (*Id.* ¶ 14.) In his Amended Complaint, he claims that these actions represented "a pattern of events demonstrating intentional retaliation against [him] for filing inmate grievances and for contacting and involving 'outside agencies' such as Senator Santorum and Mr. Lappin." (*Id.* ¶ 15.)

**B.** **Facts Regarding the Treatment Prescribed for Scabies Outbreak at USP Allenwood**

The treatment that Lombardi and his fellow inmates were to receive on October 12, 2004 consisted of the application of Permethrin cream over the whole body and maintenance of that cream on the body overnight. (*Id.* ¶ 16.) Lombardi had been

6

prescribed this same treatment on July 23, 2004 following a diagnosis of eczema. (*See* Rec. Doc. No. 121-3 at 55, 7/23/04 Telemedicine consultation.)  However, during an October 6, 2004 follow-up appointment for his skin condition, Lombardi reported that he could not tolerate the July 23 treatment and washed the Permethrin cream off of his body after only five (5) minutes.  (*See id.* at 53, 10/6/04 Telemedicine consultation.)  Because Lombardi failed to comply with the instructions to keep the Permethrin cream on his body for the prescribed time in July 2004, he was removed to the prison infirmary to undergo the treatment on October 12, 2004 to ensure his compliance.  (Rec. Doc. No. 122 ¶ 19.)  Lombardi's previous failure to keep the cream on his body for the prescribed time was determined to be one of the reasons that he became the target of subsequent threats from other inmates, which necessitated his placement in the SHU and eventual transfer to USP Lewisburg.  (*Id.*; Rec. Doc. 121-3 at 57-58, Defendant Levi's Responses to Lombardi's First Set of Interrogatories, Response No. 17.)

## II.  <u>Exhaustion of Administrative Remedies</u>

Defendants argue that they are entitled to summary judgment because Lombardi failed to exhaust administrative remedies with respect to his single remaining claim.  The Court agrees for the reasons set forth below.

Section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit. *Booth v. Churner*, 532 U.S. 731, 739 (2001). In *Oriakhi v. United States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006), the Third Circuit Court of Appeals found that the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to completing the administrative remedy process. *See also Ahmed v. Dragovich*, 297 F.3d 201, 209 & n.9 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). As such, the failure to exhaust available administrative remedies must be pleaded and proven by the Defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

In disposing of the motion to dismiss or for summary judgment that previously

8

was filed by Defendants and former Defendant Williamson, this Court determined that there still were material facts in dispute as to whether Lombardi should be excused from the exhaustion requirement with respect to his claims of retaliatory placement in the SHU and being subjected to a retaliatory transfer. (*See* Rec. Doc. No. 88 at 12-13.) This Court based its determination on Lombardi's statement in his declaration that he did not receive a BP-10 form as requested from USP Allenwood Counselor Fisher to enable him to continue the administrative remedy process and was transferred before he had the chance to exhaust his remedies. (*See id.* (citing Rec. Doc. No. 84 ¶¶ 21-23; 26).)

However, in support of the instant motion, Defendants have submitted new evidence subsequently obtained from Lombardi demonstrating that he has failed to exhaust his administrative remedies as to the sole remaining claim in this case. Defendants' statement of material facts establish the following with respect to Lombardi's filing of administrative remedies. The facts are undisputed except where noted:

On December 19, 2007, Lombardi was deposed by Defendants' counsel. (Rec. Doc. No. 122 ¶ 25.) During the course of the deposition, Lombardi testified that the first time he thought that Defendants had undertaken retaliatory action against him

was on October 13, 2004, when he was placed in the SHU.  (*Id.* ¶ 26.)  The relevant

exchange was as follows:

> Q:   At what point after you were placed in the SHU did you
> come to believe or did you reach the conclusion that you
> were there because of the retaliatory actions of Laino and/or
> Levi?
>
> A:   That would have been commencing on October 13th 2004,
> when Defendant Levi had me placed in the SHU.

(*Id.* ¶ 27.)  BOP regulations require that an inmate who believes he has been wronged

and wishes to exhaust his administrative remedies must first try to resolve a claim of

improper treatment informally via a BP-8, and then formally via a BP-9.  (*Id.* ¶ 28.)

The BP-9 must be filed no later than twenty (20) days after the event about which the

inmate complains.  (*Id.* ¶ 29 (citing 28 C.F.R. § 542.14).)  Absent a request for an

extension, Lombardi was required to file any administrative claim regarding alleged

retaliation by November 2, 2004, which was twenty (20) days after his placement in

the SHU and his first realization that he might have been subject to retaliation.  (*Id.*

¶ 30.)

Lombardi was housed at the SHU at USP Allenwood from October 13, 2004

until his transfer to USP Lewisburg on November 17, 2004.  (*Id.* ¶ 31.)  On October

20, 2004, Lombardi submitted a BP-8 which requested the following relief: "I would

like to be released from SHU back to the compound or know the reason why I am continuing to be held here and when I am getting out." (*Id.* ¶ 32; Rec. Doc. No. 121-3 at 45, 10/20/04 BP-8.)  Lombardi's BP-8 did not state that he was placed in the SHU out of retaliation by either Laino or Levi or that they created a threat to his safety.[3] (Rec. Doc. No. 122 ¶ 33.)  Shortly after Lombardi filed his BP-8, he received a response from his correctional counselor, E. Fisher.  (*Id.* ¶ 34; Rec. Doc. No. 121-3 at 46.)  In the response, Fisher explained that Lombardi was placed in the infirmary to ensure that he kept the medication to treat his scabies on for the appropriate amount of time and that, while he was in the infirmary, staff received information in reference to his safety if he was returned to Unit 1B, and thus he was placed in the SHU pending an investigation and a threat assessment that still was being conducted at that time. (*See* Rec. Doc. No. 121-3 at 46.)

During his deposition, Lombardi testified that the BOP had been responsive to

---

[3]Lombardi disputes this fact to the extent that he alleges it omits that he put Defendants Laino and Levi on notice of his claims.  (Rec. Doc. No. 128 ¶ 3.)  As support, he cites to Paragraph 21 of his Amended Complaint, which states, "Plaintiff informed defendants Williamson, Laino and Levi of his intention to file a civil suit in Federal Court if the matter of his health could not be resolved."  (Rec. Doc. No. 53 ¶ 21.)  This allegation is unrelated to whether Lombardi put Defendants on notice as to his retaliation claim because it relates to his inadequate medical care claim, which has been dismissed.  Therefore, Lombardi has not shown that a material issue of fact exists as to whether he put Defendants Laino and Levi on notice of his retaliation claim.

his BP-8. (Rec. Doc. No. 122 ¶ 36.) His testimony on that issue was as follows:

> Q:   Well, doesn't it answer your question, though? I mean you asked to be released from SHU or know the reason why you're continuing to be held there. And he tells you why you're there. You've been placed in the special housing unit pending SIS investigation and a threat assessment is currently being done. Isn't that responsive to your complaint?
>
> A:   It's responsive to this BP-8.
>
> Q:   Okay. This BP-8. Were there other BP-8's?
>
> A:   Only regarding the medical care claim.
>
> Q:   Well that was back in 2003.
>
> A:   Correct.

(*Id.*; Rec. Doc. No. 121-3 at 32.)

Lombardi filed a BP-9 dated October 28, 2004, which requested relief identical to that in his BP-8: "I would like to be released from SHU back to the compound or know the reason why I am continuing to be held here and when I am getting out." (Rec. Doc. No. 122 ¶ 37; Rec. Doc. No. 121-3 at 47, 10/28/04 BP-9.) Lombardi does not mention in this BP-9 that he was placed in the SHU out of retaliation by either Laino or Levi or that they created a threat to his safety.[4] (Rec. Doc. No. 122 ¶ 38.)

_____

[4]Lombardi disputes this fact for the same reason stated in footnote 3, and no
(continued...)

On November 8, 2004, Warden Williamson responded to the BP-9 by explaining that Lombardi was taken to Health Services on October 12, 2004 to be treated for scabies and that he was released to the general population the next day. (*See* Rec. Doc. No. 121-3 at 48, 11/8/04 Response.) Williamson further explained that, because information was received by staff that Lombardi would be in danger if he remained in the general population, he was placed in the SHU while an investigation was completed. (*See id.*) After the investigation, it was determined that Lombardi would not be safe if returned to the general population and thus he would remain in the SHU until his transfer to another facility. (*See id.*)

On November 17, 2004, Lombardi was transferred to USP Lewisburg. (Rec. Doc. No. 122 ¶ 40.) Lombardi makes the following allegation in his Amended Complaint with regard to his attempts to file a BP-10:

> [h]e requested additional administrative remedies forms (BP-10), from USP-Allenwood Counselor Earl Fisher and was denied this form because he was being transfered [*sic*]. Upon his arrival at USP-Lewisburg . . . Plaintiff requested the same administrative remedie [*sic*] form from USP-Lewisburg Case Worker Mr. Whitecavage, and was denied again because, he was told, 'since you were transfered [*sic*], the situation is moot.' Plaintiff exhausted remedies to the best of his ability.

(*Id.* ¶ 41 (quoting Rec. Doc. No. 53 at 2).) In his deposition, when he was asked

---

[4](...continued)
genuine issue of material fact exists for the same reason stated therein.

whether he intended to request the same relief in his BP-10 that he requested in his BP-8 and BP-9, Lombardi testified as follows:

> Q: Okay. Now, you talked about in paragraph six that both at Allenwood and after you got to Lewisburg that you wanted to file a BP-10. Was it your intention to ask the same question again?

> A: You don't- I'm not sure how familiar you are if you don't mind me saying -

> Q: Quite.

> A: - as far as administrative remedies.

> Q: Quite familiar. Comes up in every case.

> A: Right. That you don't change normally what your relief is. In fact, this whole issue we dealt with over the entire course of this about whether I had exhausted administrative remedies. That's what this was about. This is a series of documents that are filed in order to show that I exhausted administrative remedies. It doesn't require that I change the relief requested.

> Q: And, in fact, you're not allowed to, are you?

> A: That's correct.

> Q: You have to continue?

> A: It has to be continued. So the whole purpose was is to continue it. Eventually if it went all the way to the BP-12, I would exhaust every single one of them prior to bringing this action into federal court.

(*Id.* ¶ 42; Rec. Doc. No. 121-3 at 33-34.) Lombardi testified that he never informed

14

anyone of the alleged retaliatory action that forms the basis of his sole remaining

claim:

> Q: All right, as part of any type of form filed with the BOP have you talked about Laino's retaliation?

> A: That would have been in my federal tort claim that I initially filed - well, not initially but as part of this ongoing.

> Q: Do you mean the SF95 FTCA claim form?

> A: Yes.

> [a discussion of the SF95 form followed]

> A: Okay. I apologize. This is strictly referring to the medical negligence. I've never spoken to anyone about their actions as the defendants' actions.

> Q: Regarding retaliation?

> A: Correct.

> Q: Negligence you put on this. Okay.

> A: Correct.

> Q: Is that the same thing for Levi, and we'll get into the details of Levi, but while we're on the subject?

> A: Absolutely.

> Q: Hadn't talked to anybody about Levi either in verbal or written form and the retaliation that she engaged in allegedly?

A:     No.

(Rec. Doc. No. 122 ¶ 43.)[5]  Lombardi further explained why he never did so:

Q:     Is there a reason why you didn't speak to anyone about it?

A:     Well, since it was highly personal, I don't feel a need I should discuss my business with anyone.

Q:     Okay.  Is there a reason why you didn't put it down in writing?  Is it the same reason?

A:     In what form of writing?

Q:     Any form?

A:     I didn't feel a need to put it in writing until the amended complaint.

(*Id.* ¶ 44.)  With regard to his claim that Defendants Laino and Levi created a threat to his safety as part of their retaliatory conduct, Lombardi testified as follows:

Q:     And I understand that.  But I'm not getting at what was being done and what was told to you.  I'm asking what your state of mind was at the time.  When you were in the SHU here in Allenwood in October and early November of 2004, did you believe that there was a threat to your safety if you were returned to the block?

A:     No, I did not think there was a threat.

(*Id.* ¶ 45.)  Lombardi further testified that he was not certain of the existence of a

_____

[5]Lombardi disputes this fact to the extent that it omits that, during his deposition, he alleges that he also was asked whether he spoke to anyone about this case in general.  (Rec. Doc. No. 128 ¶ 5.)

threat until he received discovery in the course of this lawsuit.[6]  (*Id.* ¶ 46.)

Defendants argue that Lombardi failed to exhaust because his administrative remedies neither mention Defendants Laino and Levi by name nor mention any threat to his safety or retaliatory acts.  (*See* Rec. Doc. No. 121 at 12-13.)  In *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004), the Third Circuit Court of Appeals held that the administrative exhaustion requirement of the PLRA includes a procedural default component.  Further, the *Spruill* Court held that, in order to determine whether an inmate procedurally defaulted his claim, it is necessary to examine the rules the inmate must follow under the applicable grievance system.  *See id.* at 231.

In this case, the applicable grievance system is the BOP Administrative Remedy Program, which is described at 28 C.F.R. Part 542.  The purpose of the program "is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."  28 C.F.R. § 542.10(a).  Inmates first must informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief.  28 C.F.R. § 542.13(a).  If unsuccessful

---

[6]Lombardi disputes this fact to the extent he alleges it omits that he was referring only to documentation received by him through his request for documents. (*See* Rec. Doc. No. 128 ¶ 5.)  In his opposition brief, Lombardi elaborates by stating that he is referring to the Threat Assessment Memorandum that he received in the course of discovery.  (*See* Rec. Doc. No. 127 at 8.)

at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id.* at § 542.14(a). If dissatisfied with the response, the inmate then may appeal an adverse decision to the Regional Office and the Central Office of the BOP. *Id.* at § 542.15(a).

The instructions for filling out a request for an informal resolution form (BP-8) or request for administrative remedy (BP-9) are as follows:

> (c) Form.
>
> (1) The inmate shall obtain the appropriate form from CCC staff or institution staff (ordinarily, the correctional counselor).
>
> (2) The inmate shall place a single complaint or a reasonable number of closely related issues on the form. If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue. For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.
>
> (3) *The inmate shall complete the form with all requested identifying information* and shall state the complaint in the space provided on the form. If more space is needed, the inmate may use up to one letter-size (8 ½ ” by 11”) continuation page. The inmate must provide an additional copy of any continuation page. The inmate must submit one copy of supporting exhibits. Exhibits will not be returned with the response. Because copies of exhibits must be filed for any appeal (see § 542.15(b)(3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.

28 C.F.R. § 542.14(c) (emphasis added). Lombardi was not required by these

instructions to identify potential defendants by name, and his failure to do so does not necessarily mean that he failed to exhaust his administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 217 (2007) (holding that exhaustion is not *per se* inadequate simply because an individual later sued is not named in the prison grievance.) In Pennsylvania, a state inmate would be required to identify "any person(s) who may have information that could be helpful in resolving the grievance." *See* DC-ADM 804, VI. A. 7.[7] However, the applicable system here, the BOP Administrative Remedy Program, contains no such requirement, and thus Lombardi's failure to name Defendants in his administrative remedies does not automatically mean that he failed to exhaust his retaliation claim.

However, the BOP Administrative Remedy Program does require an inmate to provide "all requested identifying information." 28 C.F.R. § 542.14(c)(3). Lombardi's statement on each of his administrative remedies was "I would like to be released from SHU back to the compound or know the reason why I am continuing to be held here and when I am getting out." This statement does not contain even the vaguest reference to retaliation. As such, it does not provide the required identifying information to put Defendants Laino and Levi on notice that Lombardi was asserting a

---

[7]*See* http://www.cor.state.pa.us, DOC Policies, DC-ADM 804 Inmate Grievances.

retaliation claim against them.

In his opposition brief, Lombardi responds to Defendants' argument that he failed to exhaust by stating that, at the time he submitted his BP-8 and BP-9 in October 2004, it was unclear why he was in the SHU and finding out why was the first issue to be resolved. (*See* Rec. Doc. No. 127 at 5-6.) He also states that it took time to build a case against Defendants and that "one need not include in a grievance all the information that one would include in a judicial complaint." (*See id.* at 6.) However, Lombardi has not disputed the fact that, during his deposition, he testified that the first time he believed that Defendants had retaliated against him was on October 13, 2004 when he was placed in the SHU. (*See* Rec. Doc. No. 122 ¶ 27.) While it may be true that Lombardi needed time to gather facts to sufficiently allege a retaliation claim in a civil rights complaint, it does not excuse him from the requirement that he must put Defendants on notice of the general claim against them and allow them to respond to it through the administrative remedy process.[8] Moreover, the fact that Lombardi did not

---

[8]Lombardi's argument in his opposition brief that he placed Defendants on notice of his retaliation claim when he told them that he would file a civil lawsuit against them is of no moment because the notice he refers to is his allegation in his Amended Complaint that he "informed defendants Williamson, Laino and Levi of his intention to file a civil suit in Federal Court if the matter of his health could not be resolved." (Rec. Doc. No. 127 at 7 (citing Rec. Doc. No. 53 ¶ 21).) As already noted in footnote 3, Lombardi made this allegation in the context of the actions he took in

(continued...)

have the chance to file a BP-10 either at USP Allenwood or upon his transfer to USP

Lewisburg is inconsequential because he admitted during his deposition that he would

have stated the same request as in his BP-8 and BP-9, which clearly does not put

Defendants on notice of a retaliation claim. (*See* Rec. Doc. No. 121-3 at 33-34.)

In response to Defendants' argument that Lombardi also failed to mention any

threat to his safety in his administrative remedies, Lombardi claims that he did not

know about the threat to his safety at the time he filed his administrative remedies and

that the fact that he was unaware does not absolve Defendants of any wrongdoing.

(*See* Rec. Doc. No. 127 at 7-8.) However, in the Threat Assessment Memorandum

submitted by Lombardi as an exhibit, the investigator states that he interviewed

Lombardi within the confines of the SHU, and that "[i]nmate Lombardi said he has

nothing to say about the threats made against him, however he believes this is a way

for the other inmates in Unit 1B to get him away from watching the television

programs he likes, instead of certain sports programs." (Rec. Doc. No. 129 at 3-4,

10/15/04 Threat Assessment Memorandum.) The Memorandum is dated October 15,

2004, and therefore the investigator necessarily would have interviewed Lombardi on

---

[8](...continued)
2003 as to his inadequate medical care claim, and thus it would not have placed
Defendants on notice of a retaliation claim.

or before that date. The fact that Lombardi did not know about the Memorandum itself until he received it in discovery in the course of this action is irrelevant. The relevant fact is that the Memorandum reveals that Lombardi was aware that threats had been made against him when he was interviewed by the investigator on or before October 15, 2004, which was five (5) days before he submitted his first administrative remedy on October 20, 2004. (*See* Rec. Doc. No. 121-3 at 45, 10/20/04 BP-8 Form.) Therefore, he could have raised his claim that he believed Defendants' retaliatory actions created the threats to his safety in his BP-8 and BP-9.

A central purpose of the exhaustion requirement is to provide an opportunity for an agency, in this case the BOP, to correct its own mistakes before it is haled into federal court. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). In addition, the exhaustion of a claim at the administrative level produces a record that may be useful to the Court in the event that a civil complaint is filed. *See id.* These goals could not possibly be accomplished in this case where Lombardi failed to make even the vaguest reference to a retaliation claim in his administrative remedies. In fact, he did not even assert a retaliation claim in his original Complaint filed on February 10, 2005. Lombardi admitted at his deposition that he did not assert his retaliation claim until he submitted his proposed Amended Complaint (Rec. Doc. 53) on May 30, 2006, which

was over fifteen (15) months into this litigation.  (*See* Rec. Doc. No. 122 ¶ 44.)

For the foregoing reasons, Lombardi has failed to exhaust his administrative remedies with respect to the sole remaining claim in this action, and Defendants are entitled to summary judgment.

An appropriate Order will enter.


    s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAWRENCE LOMBARDI,         :
                                    :
        Plaintiff,          :         CIVIL NO. 4:CV-05-0300
                                    :
     v.                   :         (Judge McClure)
                                    :
MICHAEL PUGH, *et al.*,       :
                                    :
        Defendants.     :

## <u>ORDER</u>

June 9, 2009

**AND NOW,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.    The motion for summary judgment (Rec. Doc. No. 119) filed on behalf of Remaining Defendants is **GRANTED**.

2.    The Clerk of Court is directed to enter **JUDGMENT** in favor of Defendants.

3.    The Clerk of Court is directed to **CLOSE** this case.

                                                 <u> s/ James F. McClure, Jr. </u>
                                                 JAMES F. McCLURE, JR.
                                                 United States District Judge